UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MAUREEN A. REINHART,

                    Plaintiff,

          v.                                              **DECISION AND ORDER**
                                                          06-CV-752S

BROADSPIRE SERVICES, INC., and
HSBC BANK USA a/k/a HSBC BANK
USA LONG TERM DISABILITY PLAN,

                    Defendants.

## I. INTRODUCTION

Plaintiff, Maureen Reinhart, seeks to recover long-term disability benefits under

HSBC Bank's Long-Term Disability Plan ("the Plan"). The Plan is insured by Lumbermens

Mutual Casualty Company ("Lumbermens") and administered by Broadspire Services Inc.

("Broadspire").[1] It is governed by 29 U.S.C. §§ 1001, et seq., the Employee Retirement

Income Security Act of 1974 ("ERISA"). Plaintiff asserts claims for benefits and declaratory

relief pursuant to 29 U.S.C. § 1132(a)(1)(B), for penalty fees under 29 U.S.C. § 1024(b)(4),

and for attorney's fees pursuant to 29 U.S.C. § 1132(g), which are all sections of ERISA.

Presently before this Court are Plaintiff's and Defendants' dueling Motions for Summary

Judgment.[2,3] For the following reasons, Plaintiff's motion is denied and Defendants' motion

---

[1] Kemper National Services, a Lumbermens' subsidiary, formerly performed claims administration for Lumbermens, but was sold to Platinum Equity in 2003 and renamed Broadspire. Broadspire continues to perform the claims administration pursuant to an administrative services agreement. (Defendants' Response to Plaintiff's Statement of Facts ¶ 6, Docket No. 33.) In the interests of consistency and clarity, this Court will only use the name "Broadspire."

[2] In support of their motion, Defendants filed a Notice of Motion, the Affidavit of Sonia A. Williams with exhibits, a Memorandum of Law, a Local Rule 56 Statement of Undisputed Material Facts, a

is granted.

## II. BACKGROUND[4]

Plaintiff began working for Defendant HSBC Bank, USA ("HSBC") as a systems analyst in 1989. (Defendants' Statement of Facts ¶ 2, Docket No. 26.) During her employment, Plaintiff was covered under the Plan, which was insured through a Group Insurance Policy ("the Policy") that was issued to HSBC by Lumbermens. (Defendants' Statement of Facts ¶ 4.) For the first year of disability, the Policy provides long-term benefits to covered HSBC employees who are prevented from performing the "essential functions of [their] regular occupation." (Defendants' Statement of Facts ¶ 7; AR 1004.) This is referred to as the "own occupation" standard. (Id.)[5] Pursuant to the Policy, an eligible employee who, because of a physical or mental disability, is unable to perform the duties of their own occupation will be entitled to benefits for a period of one year. (Id.) To continue receiving long-term disability benefits after the "own occupation" period expires, the employee must then be unable to perform the essential functions of "any gainful

Response to Plaintiff's Statement of Facts, a Reply Memorandum, and a Response to Plaintiff's Motion for Summary Judgment. (Docket Nos. 24 – 27, 32 – 33, 40.)

[3] In support of her motion, Plaintiff filed a Notice of Motion, the Affidavit of Lawrence I. Heller, Esq., a Statement of Facts with an attached Memorandum of Law, and a Response to Defendants' Motion for Summary Judgment. (Docket Nos. 23 – 23-3, 31.)

[4] This Court has accepted facts included in Defendants' and Plaintiff's Statement of Facts to the extent that they have not controverted each other's statements. See Local Rule 56(a)(2) (statements of material fact that are not specifically controverted by the non-moving party are deemed admitted). "Policy" citations refer to pages of the Policy, which is attached as Exhibit A to the Affidavit of Sonia A. Williams. (Docket No. 13-2.) "AR" citations refer to pages of the Administrative Record, which is attached as Exhibit B to the Affidavit of Sonia A. Williams. (Docket Nos. 27-3 – 27-5.) Although Defendants' have not provided the entire record, this Court is satisfied that excerpted portions of the record are sufficient. Further, Plaintiff attaches eight exhibits that she considers to be relevant excerpts from the administrative record (all of which are also a part of Defendants' filing) and is therefore not prejudiced. Plaintiff was also furnished with a copy of the entire administrative record in April of 2005. (AR 380.)

[5] The disability must prevent the employee from earning more than 70% of the employee's pre-disability income. (AR 1004)

occupation that [their] training, education, and experience would allow [them] to perform." (Id.) This is the "any occupation" standard. (Defendants' Statement of Facts ¶ 11.)

There is no dispute that Plaintiff has a history of suffering from two disabilities: "relapsing-remitting" multiple sclerosis[6] ("MS") and depression. (AR 5, 205.) Although it is unclear which of these disabilities caused her to stop working initially, it is clear that her employment with HSBC ended in November of 2000. (Plaintiff's Statement of Facts ¶ 3, Docket No. 23-3.)  She immediately began to receive short-term benefits under the Plan's "own occupation" standard. (Plaintiff's Statement of Facts ¶ 4.)  On May 14, 2001, Plaintiff began to receive long-term disability benefits due to symptoms of depression. (Defendants' Statement of Facts ¶ 10; AR 5.) Then, in May of  2003, as Plaintiff's record was reviewed and updated to account for her MS, Broadspire granted her long-term benefits under the "any occupation" standard. (AR 208.)[7] It is these benefits, which Plaintiff received due to her MS and which were eventually terminated, that are in dispute.

In making the determination to grant Plaintiff long-term benefits initially, Broadspire solicited neurologist, Dr. Gerald Goldberg, to evaluate Plaintiff's records. After reviewing various documents, including MRI's and evaluation notes from Plaintiff's attending

---

[6]Multiple sclerosis is a common neurological disorder that affects the central nervous system. MS manifests itself in a variety of symptoms, including weakness in the extremities, a loss of dexterity, gait disturbance, a loss of sensation, nystagmus (involuntary eye movement), foot drop, and fatigue; it may take a number of different courses. 87 Attorneys' Textbook of Medicine ¶¶ 87.00, 87.20-.22 (3d. Ed.). The subtype "relapsing-remitting" requires a history of one or more remissions or acute relapses. Fred D. Lublin & Stephen C. Reingold, Defining the Clinical Course of Multiple Sclerosis: Results of an International Survey, 46 Neurology 907, 908-09 (1996).

[7]Defendant claims that Plaintiff was granted long-term benefits under the "any occupation" standard in May of 2002, not 2003. (Pl. Mem of Law, p. 6.) But nothing in the record provided to this Court substantiates this contention. The evaluation by Dr. Goldberg was performed in May of 2003 and the letter informing Plaintiff that her benefits were continued was dated June 4, 2003. (AR 204-206; 208.)

physician, Dr. Goldberg concluded that Plaintiff's impairments precluded her from work under the "any occupation" standard. Leading to this conclusion, he found that the record demonstrated that Plaintiff suffered from "fluctuating enhancing lesions," "cognitive disturbances," "fatigue," and "severe defects" in processing speed and new learning.

Plaintiff continued to receive these long-term disability benefits when, in April of 2004, Broadspire informed her that it needed "to certify [her] continued eligibility for benefits." (AR 239.) According to Broadspire, this was part of a standard, periodic review. (Id.) Broadspire also requested a statement from Dr. Weinstock-Guttman, Plaintiff's attending neurological physician, asking her to explain Plaintiff's health status and her capability to work. (Defendants' Statement of Facts ¶ 16.) Complying with this request, Dr. Weinstock-Guttman indicated that Plaintiff suffered from MS and that she could not return to work due to several symptoms of this disease, including: hyperreflexia,[8] ocular dysmetria,[9] ataxia,[10] depression, and cognitive impairment. Id.

As part of this periodic review, Broadspire solicited Dr. Vaughn Cohen, a neurologist, to conduct a peer review of Plaintiff's file. (AR 261-62.)[11] Dr. Cohen considered three documents: the statement from Dr. Weinstock-Guttman, the results of a January 22, 2004 neurological exam performed by Dr. Weinstock-Guttman, and a MRI from

---

[8]Overactive reflexes.

[9]Abnormality in which the eyes overshoot (hypermetria) or undershoot (hypometria) when attempting to fixate an object.

[10]A lack of muscle coordination during voluntary movements, such as walking.

[11]Peer review is a process whereby one or more professionals reviews and critiques the work of another professional within the same field. This is essentially the same task that Dr. Goldberg performed earlier.

May of 2004. (Id.) In his review, Dr. Cohen noted that the records submitted by Plaintiff indicated that her health had substantially improved. He highlighted several factors: (1) Plaintiff felt much stronger after a course of Novantrone therapy; (2) speech was normal; (3) visual acuity was 20/25; and (4) Plaintiff could walk without assistance. (Id.) Most importantly, Dr. Cohen found no evidence in the January neurological exam to support Dr. Weinstock-Guttman's determination that Plaintiff could not return to work due to hyperreflexia, ocular dysmetria, ataxia, depression, and cognitive impairment. (Id.) He wrote:

> There would be no reason that the claimant could not work due to hyperrflexia or ocular dysmetria. The claimant's ataxia is described as mild, and she is independently ambulatory. Although she is said to have mild cognitive impairment, this impairment is not described in any detail. The claimant is described as awake alert and oriented. There is no description of depression, and there is no report from Behavioral Health Clinicians.

(Id.)

Dr. Cohen concluded that the record failed to "support functional impairments that preclude work." (Id.) With this, Broadspire sent a letter dated November 16, 2004, informing Plaintiff that the evidence did not support her disability claim. Instead of terminating Plaintiff's benefits, however, Broadspire instructed Plaintiff to submit any additional medical documentation that could bolster her claim. (AR 282.) Accordingly, Plaintiff sent Broadspire records that demonstrated she was hospitalized for vertigo, a complication due to multiple sclerosis, in the summer of 2004. (AR 282, 350.) Also, by letter dated December 8, 2004, Dr. Weinstock-Guttman stated that Plaintiff suffered from "very active and aggressive" multiple sclerosis, which caused blurred vision, double vision, pain behind her eyes, depression, insomnia, and disabling fatigue. (AR 288.) She

5

concluded that "nobody could work under these circumstances." (Id.)

Accounting for the new information, Broadspire once again asked Dr. Cohen to review the record and determine whether Plaintiff was too disabled for employment. (AR 349-51.) This time Dr. Cohen reviewed seven documents: four neurological evaluations performed by Dr. Weinstock-Guttman in 2004, the letter from Dr. Weinstock-Guttman, a letter from Plaintiff, and his own peer review evaluation from July 2004. (Id.) Dr. Cohen again determined that the submitted documentation did not support a finding that her disability prevented her from working. (Id.) He noted that Plaintiff had fully recovered from the flare-up that resulted in her hospitalization in the summer and he emphasized that Plaintiff believed that she was getting stronger. He also noted that Dr. Guttman reported in November that she was "reportedly doing well with no clear-cut problems." (Id.) Dr. Cohen concluded, "While she may have been temporarily disabled from work during [the] period of time [of the hospitalization] and for a period thereafter, nonetheless it certainly appears that she had a full recovery from that exacerbation and that her multiple sclerosis is[,] as recently as November 2004, relatively quiescent." (Id.)

Broadspire also conducted an "employability assessment." (AR 324.). Accounting for Plaintiff's disability, education, work history, and salary requirements, the purpose of the assessment was to search for an appropriate job in her geographical area. Chau Ngyuyen-Truong, who performed the test for Broadspire, concluded that there were several local jobs that Plaintiff could perform and that also fit her skill-set, including positions as a software engineer and a manager of computer operations. (AR 324-28.)

In light of these findings, Broadspire terminated Plaintiff's disability benefits, effective February 1, 2005. (AR 373-76.) In June 2005, Plaintiff took advantage of

Broadspire's internal appeal process. (AR 386.) In a letter to the appeals coordinator, Plaintiff noted her extreme fatigue and explained that she is required to consult with various specialists. She also attached several documents, including psychological consults, neurological consults, MRIs, urological test results, and visual test results. As part of the review process, Broadspire passed this information and previous documentation to five specialists for peer review. Their findings follow.

Dr. John Schmeyer, an ophthalmologist, determined that nothing in the record supported Plaintiff's claim that she could not work due to vision problems. (AR 649.)

Dr. Elana Mendelssohn, a clinical and neuropsychologist, rendered the same conclusion with respect to Plaintiff's mental status. (AR 653-54.) She found that the documentation did not substantiate "the presence of a functional impairment from a psychological perspective." (Id.)

Dr. Richard Davi, an urologist, determined that a letter from another urologist, Dr. Philip Aliotta, which indicated that Plaintiff suffered from incontinence and neurogenic bladder, was insufficient evidence to support a finding that Plaintiff's urology problems precluded work. (AR 658.)

Dr. Michael Goldman, specializing in physical medicine and rehabilitation, found that the record could not "support a functional impairment . . . that would preclude the claimant from performing any occupation." (AR 662.)

Finally, Dr. Henry Spina, a neurologist, noted that recent MRIs showed no new lesions and that her vision problems were improving. He also concluded that the documentation did not support a functional impairment for any occupation. (AR 664-67.)

Consequently, the Broadspire appeal committee upheld the decision to terminate

7

Plaintiff's benefits; she was notified of the decision by letter on October 31, 2005. (AR 442-44.)

According to Broadspire, this exhausted plaintiff's appeal rights. However, Plaintiff contended that she had the right to a second-level appeal, and a further right to an appeal to the board of managers. Plaintiff conveyed this in a letter to Broadspire, attaching, what she purported to be, the direct language from the Policy granting her these appeal rights. (AR 859-60.) Broadspire denied that any such appeal process existed and considered her case closed. (AR 978.) This lawsuit followed.

### III. DISCUSSION

#### A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted); see also FED. R. CIV. P. 56(c).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any

evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

"Summary judgment provides an appropriate mechanism for a court to consider a challenge to the termination of disability benefits under ERISA." See Alfano v. CIGNA Life Ins. Co. of New York, No. 07 Civ. 9661, 2009 WL 222351, at *12 (S.D.N.Y. Jan. 30, 2009) (collecting cases). "In such an action 'the contours guiding the court's disposition of the summary judgment motion are necessarily shaped through the application of the substantive law of ERISA.'" Id. (quoting Ludwig v. NYNEX Service Co., 838 F.Supp. 769, 780 (S.D.N.Y.1993)).

## B.    Review of a Plan Administrator's Decision

Plaintiff's claims in this action fall under the ERISA provision that permits a participant or beneficiary of an employee benefit plan to commence a civil lawsuit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (citing 29 U.S.C. § 1132(a)(1)(B)).

Because there is no right to a jury trial under ERISA, the district court may act as

9

the finder of fact and conduct a bench trial "on the papers." Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003).  However, this is only true if summary judgment motions have already been decided. See id. (finding that a bench trial on the papers was proper because motions for summary judgment were previously denied).

The court reviews a plan administrator's decision to terminate benefits "under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 123–24 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956–57, 103 L. Ed. 2d 80 (1989)).  If the benefit plan vests the plan administrator with discretionary authority, the denial of benefits is subject to a deferential standard of review. Glenn, 554 U.S. at 111.  Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious. Pagan v. Nynex Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) ("Where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'")

In this case, it is undisputed that the Policy reserves to Defendants the discretion to determine eligibility for benefits and the authority to interpret the terms and provisions of the Policy. (AR 1020.)[12] Accordingly, this Court must evaluate Defendants' decision denying Plaintiff's claim under the arbitrary and capricious standard of review. Glenn, 554

---

[12]Broadspire is a third-party administrator of the Plan with no direct financial interest in the outcome of its decision. Therefore, the "conflict of interest" factor is not applicable. See Glenn, 554 U.S. 105 (clarifying that district courts should consider potential conflict of interests as a factor in their review when the plan administrator is either the employer offering the plan or the insurer of the plan).

U.S. at 111; Pagan, 52 F.3d at 441.

**C.    Arbitrary and Capricious Standard**

The arbitrary and capricious standard of review is narrow, and constitutes the "least demanding form of judicial review of administrative action." Seff v. NOITU Trust Fund, 781 F.Supp. 1037, 1040 (S.D.N.Y. 1992). Courts must examine whether the decision came as a result of a considered judgment of the relevant factors, and whether there is a "rational connection between the facts found and the choice made." Healix Healthcare, Inc. v. Metrahealth Ins. Co., No. 97 Civ. 6838, 1999 WL 61832, at *1 (S.D.N.Y. Feb. 10, 1999) (quoting Bowman Transp. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285-86, 95 S.Ct. 438, 440-42, 42 L.Ed.2d 447 (1974)).

The arbitrary and capricious standard is highly deferential to the plan administrator: "The court may not upset a reasonable interpretation by the administrator." Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995). This deferential review "applies to both plan interpretation and factual determinations." Dorato v. Blue Cross of W. N.Y., Inc., 163 F. Supp.2d 203, 209 (W.D.N.Y. 2001) (citing Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251 (2d Cir. 1999)). As such, "it is inappropriate . . . for the trial judge to substitute his judgment for that of the plan administrator." Bella v. Metro. Life Ins. Co., No. 98 Civ. 150, 1999 WL 782132, at *5 (W.D.N.Y. Sept. 30, 1999).

Accordingly, the decision to deny benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Kinstler, 181 F.3d at 249 (quoting Pagan, 52 F.3d at 442); Dorato, 163 F.Supp.2d at 209.

11

"Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 141 (2d Cir. 2010) (quoting Celardo v. GNY Auto. Dealers Health and Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003). In reviewing the administrator's decision, "district courts may consider only the evidence that the fiduciaries themselves considered." Miller v. United Welfare Fund,72 F.3d 1066, 1071(2d Cir. 1995).[13]

## D.    Motions for Summary Judgment

Plaintiff contends that the Plan administrator's decision was arbitrary and capricious. Plaintiff notes that there is no dispute that she suffers from MS, that the decision was a termination, not a denial, and that her treating physician is adamant that her MS prohibits her ability to work. Among other arguments, Plaintiff asserts that the peer review physicians arbitrarily discredited her treating physicians' opinions in favor of their own. She also notes that she was approved for Social Security Disability and contends that this factor was never considered by the Plan administrator. Plaintiff contends that her job precludes her from performing any job consistently.

Defendants contend that the decision to terminate Plaintiff's long-term disability benefits was not arbitrary and capricious. Specifically, Defendants note that Plaintiff's own

---

[13]For this reason, this Court will not consider the medical records submitted by Plaintiff that detail examinations performed after her final appeal. These are not part of the administrative record and therefore the Plan administrator had no opportunity to review them. Plaintiff bears the burden with respect to the admission of additional evidence. Krizek v. Cigna Group Ins., 345 F.3d 91, 98 (2d Cir. 2003). Specifically, Plaintiff must "allege facts, with sufficient specificity that would support the existence of 'good cause' permitting the admission of additional evidence beyond the administrative record." Id. at 98 n. 2 (collecting cases). Plaintiff has not demonstrated good cause.

treating physician, Dr. Weinstock-Guttman, at the time of Broadspire's decision, had recently reported that Plaintiff's multiple sclerosis was clinically stable. Moreover, Defendants assert that they gave Plaintiff several opportunities to document her claim, pointing specifically to the option allowing her to submit relevant documents after the adverse November 2004 review. They note that according to several physicians, none of these documents supported her claim.

### 1.    Defendants' Decision was not Arbitrary and Capricious

Despite Plaintiff's concerns, it is not this Court's task to engage in an ad hoc weighing of the evidence or to substitute its judgment for that of the administrator. Instead, this Court must only determine if any genuine issue of material fact exists that could render Defendants' decision arbitrary and capricious. Unquestionably, some factual disputes exist, particularly between Plaintiff's treating physician and the peer review physicians, but these disputes must create a genuine issue that the Plan administrator's determination was arbitrary and capricious. They do not.

Defendants decision to terminate Plaintiff's benefits was not "without reason, unsupported by substantial evidence, or erroneous as a matter of law." See Kinstler, 181 F.3d. at 249. The Plan administrator was deliberate and careful in making a determination that was supported by substantial evidence. In making its initial decision, Broadspire relied primarily on the opinion of a neurologist, which is the main speciality that MS implicates. That neurologist, Dr. Cohen, considered the most recent and relevant documentation of Plaintiff's disability. Based on these records, Dr. Cohen found that Plaintiff's condition was improving and that her MS had stabilized. This was supported by a MRI that "showed [a]

decrease in the size of the lesion particularly in the brain . . . and no more active enhancing lesions." (AR 256.) Dr. Cohen also found that her hyperrflexia, ocular dysmetria and ataxia would not prevent her from work. Further, Plaintiff's most recent neurological evaluation, performed by her own treating physician, indicated that "[Plaintiff] is doing much better" and that her MS was stable. (Id.)

The Plan administrator then gave Plaintiff another opportunity to submit relevant documents that might support her claim. Taking this new information under consideration, Dr. Cohen again concluded that the documentation did not support impairment. Dr. Cohen found that "cognition on gross exam was normal" and "there was no clear limitation in vision." (AR 350.) He noted that objective testing indicated that her "gag [reflex], . . . hearing, . . . sensation, . . . strength, reflexes, coordination, and gait" were all within normal limits. Thus, Dr. Cohen's conclusion was based on evidence in the record and Defendants' reliance on this opinion cannot be deemed arbitrary and capricious.

Although Dr. Weinstock-Guttman takes a contrary view, and is convinced that Plaintiff's disability prevents work, the Plan administrator is not required to "accord any special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black and Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

Further, although there is no dispute that Plaintiff was hospitalized for vertigo in the summer of 2004, Dr. Weinstock-Guttman's own evaluations, emphasized by Dr. Cohen, indicated that her dizziness was resolved and that her vision was improving. By November,

there were no "clear-cut problems." (AR 350.) Dr. Cohen found her neurologic and cognitive examination results were "essentially normal." (AR 351.) Dr. Cohen concluded that "claimant's neurological physical exam signs as of November 2004 are certainly consistent with performance of a sedentary job." (Id.) This is substantial evidence on which the Plan administer was entitled to rely.

Moreover, Defendant forwarded sixty documents, including the favorable Social Security Disability determination and Dr. Goldberg's favorable 2003 determination, to five peer review physicians, who unanimously determined that plaintiff was not precluded from work due to her disability. (AR 645, 651, 656, 660, 665.). This demonstrates a "rational connection between the facts found and the choice made." See Healix Healthcare, 1999 WL 61832, at *1; see also Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 90 (2d Cir. 2009) ("[Defendant] did not abuse its discretion by considering these trained physicians' opinions solely because they were selected, and presumably compensated, by [defendant]."); accord McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003) ("Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.") Aside from Dr. Goldberg's review, which was then over a year old, all of the peer review physicians, including Dr. Cohen, agreed that there was a lack of objective medical evidence to support Plaintiff's disability claim. Under ERISA, this is a valid reason for terminating benefits. See Hobson, 574 F.3d at 88

15

(holding that it is not unreasonable for plan administrators to require some objective evidence showing that a claimant's medical ailments are debilitating).

It is also clear, contrary to Plaintiff's assertions, that the Plan administrator and appeals committee considered all medical evidence, including that evidence concerning Plaintiff's mental disabilities and depression. Dr. Mendelssohn, specializing in neuropsychology, reviewed the findings of Dr. Hallet, Plaintiff's treating psychiatrist. (AR 652.) Dr. Mendelssohn noted Plaintiff's continued depression, but concluded that it did not create a functional impairment that would prevent her from working.

Plaintiff also relies on her award of federal social security benefits in support of her position that she is disabled. However, social security determinations are not binding on ERISA plan administrators.  See Martin v. E.I. Dupont De Nemours & Co., 999 F.Supp. 416, 424 (W.D.N.Y. 1998) (noting that "while a favorable determination from the Social Security Administration may be considered, such a finding of disability is not binding on plan administrators"); see also Gaitan v. Pension Trust Fund of the Pension Hospitalization and Benefit Plan of the Electrical Indus., 99 Civ. 3534, 2000 WL 290307, at *5 (S.D.N.Y. Mar. 20, 2000) (finding that "[a]n ERISA plan's determination on a disability claim that differs from that of the Social Security Administration is not arbitrary and capricious so long as the plan's finding is reasonable and supported by substantial evidence").

As set forth above, Plaintiff disputes the conclusions Defendant drew from the medical evidence. But even if Plaintiff can point to contrary evidence in the record, "the mere existence of conflicting evidence does not render the . . . decision arbitrary or capricious." Lekperic v. Bldg. Serv. 32B-J Health Fund, No. 02 Civ. 5726, 2004 WL

1638170, at *4 (E.D.N.Y. July 23, 2004).

This Court finds that under the extremely deferential standard that it must apply, there is no reason to disturb Defendants' decision. Defendants' medical reviewers considered the submitted medical evidence and provided Plaintiff ample opportunity to submit additional evidence in support of her claim. The Policy vests Defendants with the discretion to determine, based on the evidence submitted, whether a claimant is entitled to benefits. Defendants exercised that discretion in this case, and there is a valid basis in the administrative record for its conclusion that Plaintiff's MS did not prevent her from performing the essential functions of "any gainful occupation that [her] training, education, and experience would allow [her] to perform." As such, this Court finds that there is no genuine issue of material fact that could render Defendants' decision arbitrary and capricious.

## 2.    Defendants' Review was Full and Fair

Plaintiff also argues that Defendant did not afford her a full and fair review of her claim as required by ERISA. ERISA provides that every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

"The purpose of the full and fair review requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts." Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279, 287 (2d Cir. 2000) (citing DuMond v. Centex Corp., 172 F.3d 618, 622 (8th Cir. 1999)).  "At the very least, a full and fair review requires that the fiduciary inform the participant or beneficiary of the evidence that the fiduciary relied upon and provide an opportunity to submit written comments or rebuttal documents." Lidoshore v. Health Fund 917, 994 F.Supp. 229, 236-37 (S.D.N.Y. 1998) (quotation and citation omitted); see also Bjork, 189 F.Supp.2d at 10-11 (discussing the full and fair review standard).  Failure to provide a full and fair review may render the plan administrator's decision arbitrary and capricious. See Crocco v. Xerox Corp., 137 F.3d 105, 108 (2d Cir. 1998); Soron v. Liberty Life Assurance Co. of Boston, 318 F.Supp.2d 19, 24 (N.D.N.Y. 2004).

First, Plaintiff's claim that her contract provided for a second-level appeal and an appeal to the board of managers is without merit. Plaintiff provides no evidence that could verify or authenticate the purported contract language that she identifies. The document she relies on, which was purportedly disseminated by HSBC, makes no reference to HSBC and instead refers only to the abbreviation  "CDSP," which neither party can identify. She also claims that she received this policy information in 2000, but the document refers to "Broadspire," which did not even exist until 2003. Contrarily, the Policy in the administrative record unequivocally provides for only one level of review.[14]

---

[14]Notably, ERISA specifically protects against a requirement that the claimant bring more than one administrative appeal. 29 C.F.R. § 2560.503-1.

Secondly, Plaintiff's review was full and fair. The January 7, 2005 letter, which informed Plaintiff that her benefits were terminated complied with relevant ERISA law. (AR 373-76.) In detail, it set out the specific reason for the adverse determination, the provisions on which the determination was based, a description of any additional information necessary for Plaintiff to perfect her claim, a description of the Plan's review procedures, and the applicable time limits. See 29 C.F.R. § 2560.503-1(g)(1).[15] Defendants afforded her the opportunity to comment on their decision and to submit additional information. Her record was then thoroughly reviewed. Accordingly, this Court finds no support for Plaintiff's position that she was denied the full and fair review required under ERISA.

### 3.    Defendants Did Not Violate 29 U.S.C. § 1024(b)(4)

Plaintiff claims that Defendants did not produce Plan documents as mandated by ERISA. See 29 U.S.C. § 1024(b)(4). Specifically, Plaintiff claims that Defendants did not provide a copy of the Long-term Disability Plan and the "Summary Plan Description" pursuant to Plaintiff's request by letter for "a copy of all the materials you have that are relevant to my claim."[16] ERISA provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or

---

[15] The Code of Federal Regulations, pursuant to authority granted in ERISA, sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries.

[16] There is no dispute that Plaintiff made this request and that it was received by Defendants. Defendants responded by furnishing Plaintiff with her claims file. (AR 380.)

operated." 29 U.S.C. § 1024(b)(4). ERISA requires that the plan administrator provide "a set of all currently operative, governing plan documents." <u>Curtiss-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 84, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995).

A deliberate failure by the plan administrator to provide such information within thirty days allows a court, in its discretion, to impose a penalty of up to $100 per day.  29 U.S.C. § 1132(c)(1)(B); <u>Devlin v. Empire Blue Cross & Blue Shield</u>, 274 F.3d 76, 90 (2d Cir. 2001). However, Defendants' actions were not "deliberate." Broadspire understood Plaintiff's letter as a request for her claims file and supplied it to her accordingly. (AR 380.) Due to the indefinite nature of Plaintiff's request, Defendants were never aware that Plaintiff desired these documents. As such, they could not have acted deliberately or in bad faith. <u>See Pagovich v. Moskowitz</u>, 865 F.Supp. 130, 137 (S.D.N.Y.1994) (finding that, in exercising its discretion, a court may consider whether the plan administer acted with bad faith).

Although Plaintiff asserts that she "repeatedly requested" the Plan and the Plan summary, she provides no documentation to support this claim. Further, even though Plaintiff would have been immediately aware that she did not receive the Plan or Plan summary in response to her request, nothing in the record indicates that she followed-up or made additional requests for those documents. Plaintiff's indifference indicates that she was not prejudiced by the Defendants' failure to supply those documents. <u>See</u> <u>Pagovich</u>, 865 F.Supp. at 137 (finding that prejudice to the claimant is also a factor that the court can consider). Therefore, summary judgment for the Defendants' is warranted.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that no genuine issue of material fact exists as to whether Defendants acted arbitrarily and capriciously in terminating Plaintiff's

benefits. Additionally, there is no genuine dispute that Defendants' violated  29 U.S.C. § 1024(b)(4). Accordingly, Plaintiff's motion for summary judgment is denied and Defendants' is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 23) is DENIED.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 24) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:        July 27, 2011
              Buffalo, New York

                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                            Chief Judge
                                     United States District Court